```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
HECTOR FRAZIER,

                          Petitioner,
                                                           **MEMORANDUM & ORDER**
            - against -                                       08-CV-1737 (RRM)

LUIS MARSHALL, Superintendent,
Sing Sing Correctional Facility,

                          Respondent.
------------------------------------------------------------------------X
```
MAUSKOPF, United States District Judge.

Pending before this Court is Hector Frazier's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner Frazier ("petitioner") seeks relief from his conviction in the Supreme Court of the State of New York, Queens County for Robbery in the First Degree under New York Penal Law ("N.Y.P.L.") § 160.15[4]. He was sentenced to twenty-two years of incarceration to be followed by five years of post-release supervision.

Petitioner asserts three grounds in support of his application: (1) denial of due process and violation of the prohibition against double jeopardy when sentencing judge did not inform petitioner of the post-release supervision portion of his sentence; (2) denial of due process through incorrectly sentencing petitioner as a persistent violent felony offender;[1] and (3) denial of constitutional rights through prosecutorial misconduct during the trial. (Pet. for Writ of Habeas Corpus ("Habeas Pet.") (Doc. No. 1) at 4, 6, 8.)

For the reasons set forth below, the petition is DENIED on all grounds.

---

[1] Although petitioner makes this claim in his habeas petition, throughout his appeal in state courts, he claimed instead that his sentence was unduly harsh and excessive. He returns to the argument of unduly harsh and excessive sentence in his memorandum submitted in connection with this petition. As will be discussed in detail below, it seems likely that petitioner, in spite of the language used in his petition, intended to continue with the claim that his sentence was unduly harsh and excessive before this Court.

## Background

**I.     Arrest and Trial**

On January 16, 2003, at approximately noon, John Yeamans was working as a chimney sweep on the roof of a house in Laurelton, Queens, when he noticed petitioner watching him from a car parked across the street. (Trial Tr. 216.) Ten to fifteen minutes later, when Yeamans descended from the roof and approached his work van parked nearby, petitioner drove away. (*Id.* 217.) A short time later, petitioner returned to the location of Yeamans' van by driving the wrong way on a one-way street. (*Id.*) Petitioner got out of his car and began to rummage around in the van. (*Id.* 217-18.) Petitioner approached Yeamans and asked him how much money he earned, and Yeamans replied that his income was not significant. (*Id.* 218.) Petitioner then pulled out a large handgun, demanded Yeamans' wallet, and threatened to kill Yeamans. (*Id.* 218-19.) Yeamans gave petitioner his wallet, which contained three hundred dollars cash, his driver's license, and two credit cards. (*Id.* 219.) Petitioner ordered Yeamans to lie down on the ground, but Yeamans jumped into the van. (*Id.* 220.) Petitioner pounded on the van door, yelling for Yeamans to get out. (*Id.*) Yeamans exited the van and backed away from petitioner. (*Id.*). He then threw his keys in the air and ran into a neighbor's backyard, while calling the police from his cell phone. (*Id.* 220, 222.)

When the police arrived, Yeamans recounted the incident, provided police with a description of petitioner, and indicated where petitioner had hit the van. (*Id.* 223-26.) The police were able to lift prints from the door, and those prints were matched to petitioner. (*Id.* 272, 279, 377-79.) On February 13, 2003, petitioner was arrested in connection to this robbery. (*Id.* 388.)

Petitioner was charged, by Queens County Indictment Number 501/03, with robbery in the first and second degrees (N.Y.P.L. §§ 160.15[4], 160.10[2][b]).

Petitioner proceeded to trial in the Supreme Court, Queens County (Aloise, J.). Yeamans testified and identified petitioner in court. The also prosecutor called William Umstead as an expert witness in fingerprinting and fingerprint analysis. (*Id.* 307.) At a recess taken during Umstead's testimony, petitioner's attorney observed the prosecutor conversing with Umstead at the witness stand. (*Id.* 331.) Petitioner's attorney moved for a mistrial as a result of this conversation. (*Id.* 332.) The court questioned the prosecutor and the witness as to the nature of their conversation. (*Id.* 331-32.) Umstead explained that they were talking about fingerprint comparison sheets, which the prosecutor had introduced into evidence. (*Id.* 332.) The fingerprint sheets showed blown-up images of the fingerprints taken from the van after the robbery and petitioner's fingerprints for the purposes of comparing the two images. (*Id.* 328.) The prosecutor further clarified that he was making sure he had provided petitioner's attorney with the fingerprint sheets being discussed. (*Id.* 333.) The court denied petitioner's motion for a mistrial. (*Id.* 332.)

On March 23, 2004, the jury convicted petitioner of Robbery in the First Degree. (Trial Tr. 484.)

## II. Sentencing

At the sentencing, held on May 13, 2004, petitioner was adjudicated a second felony offender upon his admission to a 1997 conviction for Criminal Possession of Stolen Property in the fourth degree. (Sentencing Mins. at 3-4.) The trial court announced a sentence of twenty-two years of incarceration and concluded the proceedings. (*Id.* at 7.) However, a short time later, petitioner was returned to the courtroom because the sentencing court had realized it had forgotten to impose the mandatory term of post-release supervision. (*Id.*) The court then imposed

a term of five years of post-release supervision to follow the imposed term of incarceration. (*Id.* at 8.) Petitioner is incarcerated pursuant to this judgment of conviction.

III. **Direct Appeal**

On appeal of his conviction to the Supreme Court of the State of New York, Appellate Division, Second Department ("Appellate Division"), petitioner raised the following claims: (1) the prosecutor made improper remarks during his summation; and (2) petitioner's sentence was unduly harsh and excessive because the victim was not physically harmed and petitioner's prior convictions, only one of which was for a felony, were all for non-violent offenses. (Pet'r's App. Div. Br. at i.)

On August 25, 2005, petitioner filed a *pro se* supplemental brief. In the brief, dated February 23, 2006, petitioner raised the following claims: (1) the State failed to turn over alleged *Rosario* material; and (2) the trial court erred in failing to declare a mistrial or issue a curative instruction to the jury following prosecutor's conversation with a witness while the witness was still sworn in and on the stand. (Pet'r's App. Div. Supp. Pro Se Br. at 3.)

On December 19, 2006, the Appellate Division affirmed Petitioner's conviction and held that: (1) several of petitioner's complaints about the prosecutor's comments during summation were unpreserved for appellate review and that, in any event, any such errors were harmless due to overwhelming evidence of petitioner's guilt; (2) petitioner's sentence was not excessive; (3) petitioner's claim of alleged *Rosario* error was both unpreserved and without merit; and (4) "the remaining contentions raised in the supplemental pro se brief are without merit." *People v. Frazier*, 35 A.D.3d 759 (N.Y. App. Div. 2006).

Petitioner sought leave to appeal to the New York Court of Appeals, advancing all of the claims raised in the Appellate Division and adding a new claim, stating that he had not been

4

informed of post-release supervision at the time of sentencing. At this time, the transcript of the sentencing minutes was incomplete and did not include the second call of the case, during which the post-release supervision was imposed. Thus, at this time, both parties and the state courts erroneously believed that the post-release supervision portion of the sentence had not been stated on the record. On April 12, 2007, his application was denied, with leave to renew within thirty days of the Court of Appeals decision in the then-pending case of *People v. Louree*, a case involving another post-release supervision issue. *People v. Frazier*, 8 N.Y.3d 946 (2007). On June 5, 2007, the Court of Appeals decided *People v. Louree*, 8 N.Y.3d 541 (2007). That same day, petitioner renewed his application of leave to appeal.

On July 19, 2007, the State moved in the Supreme Court, Queens County for an order directing that petitioner be resentenced for the purpose of clarifying the post-release supervision portion of his sentence. On September 21, 2007, the Court of Appeals granted petitioner's renewed application for permission to appeal with respect to his claim concerning the legality of the post-release supervision portion of his sentence. *People v. Frazier*, 9 N.Y.3d 922 (2007).

On October 24, 2007, the Supreme Court, Queens County granted the People's request for a resentencing and directed that petitioner be produced for resentencing on November 7, 2007. *People v. Frazier*, Indict. No. 501/03 (N.Y. Sup. Ct. Oct. 24, 2007).

The issue regarding the imposition of post-release supervision was argued vigorously between the parties in multiple briefs; however, both sides were operating without the full transcript and thus were under the misconception that the sentencing judge had forgotten to announce this portion at petitioner's sentencing. This error was corrected in a letter from the District Attorney's Office to the New York Court of Appeals on November 14, 2007, that indicated the following:

> On or about October 30, 2007, The District Attorney's Office was notified by [trial and sentencing judge] Justice Aloise's chambers that additional sentencing minutes had been discovered, which indicated that, on the date of defendant's sentencing, the sentencing court realized that it had forgotten to impose a term of post-release supervision and the case was re-called for the purpose of correcting that oversight.

(Letter from Karen W. Weiss, Assistant District Attorney, Queens County to the Hon. Stuart M. Cohen, N.Y. Court of Appeals (Nov. 14, 2007).) A copy of the additional minutes was enclosed with the November 14, 2007 letter to the Court of Appeals, and the District Attorney's Office immediately faxed them to petitioner's attorney. (*Id*.) The resentencing hearing was cancelled. (*Id*.)

On January 15, 2008, the Court of Appeals affirmed the order of the Appellate Division affirming petitioner's judgment of conviction and found that petitioner had been informed at the time of sentencing that his sentence would include post-release supervision. *People v. Frazier*, 9 N.Y.3d 1021 (2008).

Petitioner did not seek a writ of *certiorari* in the Supreme Court.

IV. **The Instant Petition**

On April 21, 2008, petitioner filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raised three claims in his petition: (1) denial of due process and violation of the prohibition against double jeopardy when sentencing judge did not inform petitioner of the post-release supervision portion of his sentence; (2) denial of due process through incorrectly sentencing petitioner as a persistent violent felony offender; and (3) denial of constitutional rights through prosecutorial misconduct during the trial. (Habeas Pet. at 4, 6, 8.) After reviewing the record and the merits of each claim, the Court denies petitioner habeas relief on all three grounds.

## Applicable Law

### I. Standard of Review Under 28 U.S.C. § 2254(d)

In deciding whether to grant a federal habeas corpus petition, the Court must apply the standard of review set forth by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The AEDPA requires federal courts to give great deference to state court adjudications. *Brown v. Artuz*, 283 F.3d 492, 500 (2d Cir. 2002). The necessary predicate to this deferential review standard established by the ADEPA is that petitioner's federal habeas claims have been adjudicated on the merits by the state court. *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001). A state court "adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotations marks omitted). In assessing whether a claim was disposed of on the merits, the Court considers "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests

reliance upon procedural grounds rather than a determination on the merits." *Id.* at 314 (quoting *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999)).

Petitioner can satisfy the first exception by proving either that the state court ruling was "contrary to" or an "unreasonable application" of federal law. Supreme Court jurisprudence is the source of clearly established federal law for the purposes of this exception. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) ("Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.") (internal quotation marks and citation omitted). A state court decision is contrary to established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a state court decides a case differently than the Supreme Court on a set of facts that is materially indistinguishable. *Williams*, 529 U.S. at 405-06. A state court unreasonably applies federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. An unreasonable application of federal law by state court must be "objectively unreasonable." *Id.* at 409-10. That is, it must meet a higher threshold than a merely incorrect application. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). To satisfy the second exception, only clear and convincing evidence that the factual findings in state court were unreasonable can rebut the presumption that those findings were correct. 28 U.S.C. § 2254(e)(1); *see also Wiggins v. Smith*, 539 U.S. 510, 551 (2003).

II. **The Exhaustion Requirement**

Petitioner must exhaust all state-provided remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a

federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). According to the Second Circuit, courts must follow a two-step exhaustion analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *see also* 28 U.S.C. § 2254(c). To satisfy this requirement, the claim must be fairly presented to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This can be done by informing the state court of the factual and legal premises of the federal claim. *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).

If a claim in a petition is found to be unexhausted, the petition is a mixed petition. In this situation, if petitioner demonstrates good cause for not exhausting the claim, the Court has the discretion to grant a stay or abeyance. *Rhines v. Webber*, 544 U.S. 269, 277 (2005). Alternatively, the Court has the option of denying a petition that includes an unexhausted claim based on an analysis of the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

When assessing whether a claim brought by a *pro se* litigant has been exhausted, this Court must construe the claims liberally and interpret them to raise the strongest possible arguments suggested. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993) (construing plaintiff-appellant's arguments liberally because of his difficulty with English and his status as a *pro se* litigant). A writ of habeas corpus must remain accessible to individuals who lack a strong legal background or the

financial means to retain counsel. *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). Thus, the Court has an obligation to protect *pro se* litigants' rights by making reasonable allowances for errors that result from their lack of legal training. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (holding that the right to self-representation should not be impaired by harsh application of technical rules).

## Discussion

### I. Post-Release Supervision

Petitioner claims that the sentencing judge did not impose the five-year term of post-release supervision portion of his sentence; rather , it was added to the record by the court reporter after petitioner had already served three years of his sentence in what petitioner claims is a violation of his Sixth Amendment due process right.[2] (Pet'r's Resp. Mem. (Doc. No. 7) at 1-2.)

Petitioner first raised this claim before the New York Court of Appeals, which found, upon review of the full hearing transcript, that petitioner was informed of the mandatory post-release supervision portion of his sentence at the time of his sentencing. *Frazier*, 9 N.Y.3d at 1022. Under AEDPA, this Court must defer to the state court decision unless it is contrary to or an unreasonable application of the law based on Supreme Court jurisprudence or is an unreasonable interpretation of the facts. 28 U.S.C. § 2254(d).

The full record of the sentencing minutes provides complete factual support for the Court of Appeals' conclusion. In October 2007, the District Attorney's Office was notified by the

---

[2] Both the Second Circuit and the New York Court of Appeals have found that post-release supervision administratively imposed by anyone other than a judge is improper. *See Earley v. Murray*, 451 F.3d 71, 75-76 (2d Cir. 2006) ("Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty.") (quoting *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 464 (1936)); *Garner v. N.Y. State Dep't Corr. Servs.*, 10 N.Y.3d 358 (2008); *People v. Sparber*, 10 N.Y.3d 457 (2008). In 2008, the New York State legislature responded by passing N.Y. Correct. Law § 601-d to "provide a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered post-release supervision terms." *People v. Williams*, 14 N.Y.3d 198, 206 (2010).

Supreme Court, Queens County that the court reporter had located additional minutes of petitioner's sentencing indicating that, on the original sentencing date, the case was recalled after the sentencing court realized that it had forgotten to impose a term of post-release supervision; and that a five-year term of post-release supervision was imposed by the sentencing judged in open court in the presence of petitioner and his attorney. (Resp't's Aff. (Doc. No. 3) ¶ 20; *see also* Letter from Karen W. Weiss, Assistant District Attorney, Queens County to the Hon. Stuart M. Cohen, N.Y. Court of Appeals (Nov. 14, 2007) (on file with the Court).) The District Attorney's Office immediately faxed the newly discovered sentencing minutes to petitioner's appellate attorney, and petitioner's resentencing hearing was cancelled. (Resp't's Aff. ¶ 20.)

Petitioner alleges that the post-release supervision portion of his sentence is a violation of the Supreme Court holding in *Hill v. United States ex rel. Wampler* that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court," 298 U.S. 460, 464 (1936); and of the Second Circuit holding in *Early v. Murray* that "[t]he only sentence is imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect." 451 F.3d 71, 75 (2d Cir. 2006). However, the complete record of petitioner's sentencing hearing minutes indicates that the sentencing judge did alter the sentence in a subsequent proceeding when he recalled the case, rendering the post-release supervision portion from that second call at sentencing as effective as the first. (*See* Resp't's Aff. ¶ 20.) Thus, petitioner's claim of improperly imposed post-release supervision is defeated by the *complete* record of sentencing, which includes the additional minutes showing that the judge did in fact articulate the post-release supervision portion of his sentence and that there is no violation of Supreme Court jurisprudence as set forth in *Hill*.

11

Petitioner does not allege that New York's highest court unreasonably interpreted the facts in reaching its holding on this claim. Petitioner had, but chose not to exercise, the option of challenging the accuracy of the sentencing record. *Hill*, 298 U.S. at 464 (citing *People ex rel. Trainor v. Baker*, 89 N.Y. 460, 466 (1882)) (noting that an inaccurate record can be remedied by a motion to correct it). However, there is an "irrebuttable presumption" that the record is correct unless it has been corrected in a direct proceeding, and until then, "a court will close its ears to a suggestion that the sentence entered in the minutes is something other than the authentic expression of the sentence of the judge." *Id.* Because petitioner argues only that he does not remember being recalled by the sentencing judge to have the post-release supervision added to his sentence (*see* Pet'r's Resp. Mem. at 1-2.), and makes no motion to challenge the accuracy of the record, the Court must assume that the additional minutes are accurate and authentic. Therefore, there was no objectively unreasonable interpretation of the facts by New York's highest court.

Thus, the Court of Appeals determined on the merits that the post-release supervision portion of the sentence was properly imposed. Additionally, the sentencing minutes provide factual evidence in support of this conclusion. As neither exception to the AEDPA's deferential standard of review applies, this Court must defer to the decision of New York's highest court.

**II.    Other Sentencing Claims**

Petitioner's second ground for habeas relief appears to focus on a claim that he was incorrectly sentenced as a persistent violent felony offender. (Habeas Pet. at 6.) However, on appeal in state courts and in his other filings before this Court, petitioner claims merely that his sentence was excessive and unduly harsh. (*See, e.g.*, Pet'r's App. Div. Br. at i; Pet'r's Resp. Mem. at 2.) As such, the State argues, petitioner's claim regarding his persistent felony offender

status is unexhausted because petitioner did not raise it during his appeal in state courts. (Resp't's Aff. ¶ 26.)

Because petitioner is a *pro se* litigant, the Court must construe his claims liberally and read them to suggest the strongest possible arguments. *See Burgos*, 14 F.3d at 790; *Mikinberg*, 988 F.2d at 330. Doing so, and out of an abundance of caution, the Court will consider both claims, and, as discussed below, finds them both to be without merit.

### a. Persistent Violent Felony Offender Status

Although petitioner claims he was incorrectly sentenced as a persistent violent felon, the sentencing minutes reveal that he was actually sentenced as a second felony offender, pursuant to N.Y.P.L. § 70.06. (Sentencing Mins. at 3-7.) In fact, petitioner was adjudicated a second felony offender upon his own admission. (*Id.* at 4.) The prosecutor even acknowledged during sentencing that petitioner is not a persistent violent felon based on his record and informed the court that petitioner's record did not contain any violent felonies. (*Id.* at 3-4.) The judge sentenced him as a second felony offender upon petitioner's admission of his prior felony conviction (*Id.* at 3-7.) Petitioner is therefore mistaken in his claim that he was incorrectly sentenced under the classification of persistent violent felon.

### b. Unduly Harsh and Excessive Sentence

Petitioner's claim that his sentence was unduly harsh and excessive is exhausted, and this Court must defer to the state court holding that petitioner's sentence was not excessive and unduly harsh. *See Brown*, 283 F.3d at 500. The Appellate Division held that "the sentence imposed was not excessive." *Frazier*, 35 A.D. at 760. The claim was thus adjudicated on the merits, and petitioner is entitled to habeas relief only if he can demonstrate that one of the two exceptions to the AEDPA's deferential standard applies. *See* 28 U.S.C. § 2254(d). Petitioner

cites no Supreme Court jurisprudence that the state court decision could be considered contrary to, nor does he allege that his sentence was an unreasonable application of federal law as established by the Supreme Court. He also does not allege that his sentence was based on an unreasonable determination of facts in light of the evidence presented. Thus, neither exception to AEDPA's state deference requirement applies to this claim. This Court, therefore, must defer to the state court decision that was made based on the merits of this claim – petitioner's sentence was not excessive and unduly harsh.

Further, addressing its merits, petitioner's claim of unduly harsh or excessive punishment fails because his sentence was appropriately based on his classification as a second felony offender, pursuant to his admission to a 1997 felony conviction for Criminal Possession of Stolen Property in the Fourth Degree. New York's sentencing regime dictates that a second felony offender convicted of a class B felony offense must serve a determinate imprisonment sentence of at least eight years but not more than twenty-five years. N.Y.P.L. § 70.06(6)(a). Petitioner was convicted of Robbery in the First Degree, a class B felony, and has been sentenced to twenty-two years in prison and five years' mandatory post-release supervision. (Sentencing Mins. at 3-7.) "When a sentence imposed is within the range prescribed by law, 'a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal.'" *Thigpen v. Brown*, No. 06-CV-3110(NG)(VVP), 2008 WL 5110890, at *13 (E.D.N.Y. Dec. 2, 2008) (quoting *Underwood v. Kelly*, 692 F. Supp.146, 152 (E.D.N.Y. 1988)). Here, petitioner was correctly sentenced as a second felony offender, and his sentence fell within the range of permissible sentences set forth in law. Thus, petitioner's claim is wholly without merit.

**III.     Prosecutor's Conversation With the Expert Witness**

Finally, petitioner claims a violation of his due process rights and right to a fair trial as a result of an *ex parte* conversation between the prosecutor and the expert witness, Mr. Umstead, at a recess during Umstead's testimony. (Habeas Pet. at 3.)  When the incident occurred petitioner's attorney immediately moved for a mistrial, and the trial judge questioned both the prosecutor and Mr. Umstead about the content of their conversation and denied the motion for a mistrial. (Trial Tr. 331-32.). The motion was then denied. (*Id.* at 332.)   The Appellate Division rejected petitioner's claim on appeal,  finding it to be "without merit," *Frazier*, 35 A.D.3d at 760, and the Court of Appeals affirmed. *Frazier*, 9 N.Y.3d at 1021.  As such, AEDPA deference is required.   28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412; *Morris v. Reynolds*, 264 F.3d 38, 46 (2d Cir. 2001).

Upon review, petitioner raises nothing to warrant habeas relief.  He does not contest the factual record or any interpretation of the facts presented with regard to this incident. Additionally, he makes no argument that this finding is contrary to or an unreasonable application of federal law as determined by the Supreme Court. He cites no federal law or Supreme Court decision on this point, and he does not allege that either has been violated; petitioner does not contend that either of the exceptions to AEDPA's standard of review applies.

Moreover, petitioner faces a high burden of proof in order to show that he is entitled to habeas relief based on prosecutorial misconduct, even if the conduct is improper or universally condemned. *Gatto v. Hoke*, 809 F.Supp. 1030, 1040 (E.D.N.Y. 1992). Petitioner must demonstrate that the prosecutor's misconduct "had a substantial and injurious effect or influence in determining the outcome of his trial" in order to obtain habeas relief on this ground. *Friedgood v. Keane*, 51 F. Supp. 2d 327, 343 (E.D.N.Y. 1999). When determining whether

prosecutorial misconduct has risen to this level, the Court must consider: (1) the severity of the misconduct; (2) the measures the trial court took to remedy the misconduct; and (3) the certainty of conviction absent the misconduct. *Id.* at 343-44.

Here, petitioner cannot meet this burden. The trial court addressed the misconduct immediately after it occurred; the trial court questioned both the prosecutor and the witness about the nature of the conversation and was satisfied that it was not substantive in nature. (Trial Tr. 332.) It determined that the misconduct did not need to be remedying by declaring a mistrial. (*Id.*) There was also a high degree of certainty of conviction based on the evidence offered against petitioner. The Appellate Division specifically noted, "any errors were harmless in light of the overwhelming evidence of defendant's guilt, which included the complainant's in-court identification of the defendant as the perpetrator and the fingerprint evidence linking the defendant to the scene of the robbery." *Frazier*, 35 A.D.3d at 759-60. Thus, petitioner is not entitled to habeas relief on this claim.

**Conclusion**

For the reasons stated herein, it is hereby ORDERED that petitioner's habeas petition (Doc. No. 1) is DENIED in its entirety.

A certificate of appealability shall not be issued as petitioner has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to dismiss this petition, send a copy of the judgment and this Order to petitioner, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
August 31, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge